ORIGINAL

**19 MAG 11193**

Approved: _/s/_____
ALEXANDER LI
Assistant United States Attorney

Before: THE HONORABLE ROBERT W. LEHRBURGER
United States Magistrate Judge
Southern District of New York

------------------------------------ X

UNITED STATES OF AMERICA

    - v. -

OLADAYO OLADOKUN,
FAROUK KUKOYI,
BALDWIN OSUJI,
HENRY OGBUOKIRI,
JOSHUA HICKS,
ANTHONY LEE NELSON,
DERRICK BANKS,
IBRAHIIMA DOUKOURE,
JAMAR SKEETE,
PAUL YAW OSEI, JR.,
KOWAN POOLE,
DARREL WILLIAMS,
DARYL BARTLEY,
GARNET STEVEN MURRAY-SESAY,
  a/k/a STEVEN GARNET
    MURRAY-SESAY, and
ANDREW HEAVEN,

                Defendants.

**SEALED COMPLAINT**

Violations of 18
U.S.C. §§ 1349,
1028A, and 2

COUNTY OF OFFENSE:
New York

------------------------------------ X

SOUTHERN DISTRICT OF NEW YORK, ss.:

    DANIEL ALESSANDRINO, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD"), and charges as follows:

### COUNT ONE
(Conspiracy to Commit Bank Fraud and Wire Fraud)

    1.    From at least in or about April 2018 up to and including at least in or about September 2019, in the Southern District of

New York and elsewhere, OLADAYO OLADOKUN, FAROUK KUKOYI, BALDWIN OSUJI, HENRY OGBUOKIRI, JOSHUA HICKS, ANTHONY LEE NELSON, DERRICK BANKS, IBRAHIIMA DOUKOURE, JAMAR SKEETE, PAUL YAW OSEI, JR., KOWAN POOLE, DARREL WILLIAMS, DARYL BARTLEY, GARNET STEVEN MURRAY-SESAY, a/k/a STEVEN GARNET MURRAY-SESAY, and ANDREW HEAVEN, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree, together and with each other, to commit bank fraud, in violation of Title 18, United States Code, Section 1344, and wire fraud, in violation of Title 18, United States Code, Section 1343.

2. It was a part and object of the conspiracy that OLADAYO OLADOKUN, FAROUK KUKOYI, BALDWIN OSUJI, HENRY OGBUOKIRI, JOSHUA HICKS, ANTHONY LEE NELSON, DERRICK BANKS, IBRAHIIMA DOUKOURE, JAMAR SKEETE, PAUL YAW OSEI, JR., KOWAN POOLE, DARREL WILLIAMS, DARYL BARTLEY, GARNET STEVEN MURRAY-SESAY, a/k/a STEVEN GARNET MURRAY-SESAY, and ANDREW HEAVEN, the defendants, and others known and unknown, willfully and knowingly, did execute and attempt to execute a scheme and artifice to defraud financial institutions, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institutions, by means of false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, Section 1344.

3. It was a further part and object of the conspiracy that OLADAYO OLADOKUN, FAROUK KUKOYI, BALDWIN OSUJI, HENRY OGBUOKIRI, JOSHUA HICKS, ANTHONY LEE NELSON, DERRICK BANKS, IBRAHIIMA DOUKOURE, JAMAR SKEETE, PAUL YAW OSEI, JR., KOWAN POOLE, DARREL WILLIAMS, DARYL BARTLEY, GARNET STEVEN MURRAY-SESAY, a/k/a STEVEN GARNET MURRAY-SESAY, and ANDREW HEAVEN, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money or property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate or foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

**COUNT TWO**
(Aggravated Identity Theft)

4. From at least in or about April 2018 up to and including at least in or about September 2019, in the Southern District of New York and elsewhere, HENRY OGBUOKIRI, JOSHUA HICKS, DERRICK BANKS, KOWAN POOLE, DARREL WILLIAMS, DARYL BARTLEY, and GARNET STEVEN MURRAY-SESAY, a/k/a STEVEN GARNET MURRAY-SESAY, the defendants, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, OGBUOKIRI, HICKS, BANKS, POOLE, WILLIAMS, BARTLEY, and MURRAY-SESAY used the names and social security numbers of other persons to open bank accounts during and in relation to the bank fraud and wire fraud conspiracy charged in Count One of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1) & (b), and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

5. I am a Detective with the NYPD assigned to the Financial Crimes Task Force. I have been employed by the NYPD for more than 17 years. I have been personally involved in the investigation of this matter, and I base this affidavit on that participation, my conversations with other law enforcement agents and other individuals, my examination of reports and records, as well as my training and expertise. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of the investigation. Where the contents of conversations of others are reported herein, they are reported in substance and in part.

**Overview of the Scheme**

6. As set forth below, there is probable cause to believe that from at least April 2018 to at least September 2019, OLADAYO OLADOKUN, FAROUK KUKOYI, BALDWIN OSUJI, HENRY OGBUOKIRI, JOSHUA HICKS, ANTHONY LEE NELSON, DERRICK BANKS, IBRAHIIMA DOUKOURE, JAMAR SKEETE, PAUL YAW OSEI, JR., KOWAN POOLE, DARREL WILLIAMS, DARYL BARTLEY, GARNET STEVEN MURRAY-SESAY, a/k/a STEVEN GARNET MURRAY-SESAY, and ANDREW HEAVEN, the defendants, participated in a bank and wire fraud scheme consisting of three key phases:

   a. First, members of the conspiracy fraudulently opened more than 60 business bank accounts (the "Accounts") at

national banks. The Accounts were typically in the names of corporate entities. To open the Accounts, members of the conspiracy presented the real personal identifying information, including names and social security numbers, of other people.

   b. Second, members of the conspiracy deposited into the Accounts fraud money that they typically obtained from victims in one of two ways.

      i. In some instances, members of the conspiracy deposited stolen or forged checks. For example, members of the conspiracy obtained three checks that had been mailed by a national sports league from Manhattan, New York, and deposited those checks into Accounts that were newly opened in the names of the intended recipients.

      ii. In other instances, members of the conspiracy fraudulently obtained wire and automated clearinghouse ("ACH") transfers. For example, a member of the conspiracy posing as a victim's financial advisor caused the victim to wire money from a bank branch in Manhattan, New York, to an Account controlled by members of the conspiracy.

   c. Third, members of the conspiracy accessed the fraud proceeds by transferring them into other Accounts or by withdrawing cash. Certain members of the conspiracy also maintained online access to the Accounts, and they would monitor multiple Accounts from the same electronic device.

7. To date, law enforcement has identified more than 100 fraudulent transactions in furtherance of the conspiracy, totalling more than $18 million. The instances discussed below are not intended to list each and every fraud transaction, but rather are intended to provide illustrative examples and to establish probable cause as to each defendant named herein.

### The Sports League Check Fraud

8. Based on my discussions with other law enforcement agents and other individuals and my review of law enforcement records, bank records, and surveillance videos and stills, I have learned the following information, among other things:

   a. On or about February 1, 2019, a national sports league ("Victim-1") mailed three checks from Manhattan, New York: (1) a $202,374.72 check ("Check-1") to a major sports team ("Victim-2"); (2) a $67,266.56 check ("Check-2") to a facility

4

services firm ("Victim-3"); and (3) a $85,649.68 check ("Check-3") to a technology manufacturer ("Victim-4").

  b. **Victim-2**.

    i. On or about February 11, 2019, an individual I recognized from a photograph in a law enforcement database as GARNET STEVEN MURRAY-SESAY, a/k/a STEVEN GARNET MURRAY-SESAY, the defendant, was recorded on surveillance opening an account ("Account-1") at a national bank ("Bank-1") in the name of Victim-2. To open Account-1, MURRAY-SESAY provided Bank-1 with the name of another person ("ID Victim-1"). MURRAY-SESAY also provided Bank-1 with a social security number matching the actual social security number of ID Victim-1.

    ii. On or about February 12, 2019, an individual I recognized from a prior arrest photograph as HENRY OGBUOKIRI, the defendant, was recorded on surveillance depositing Check-1 into Account-1.

    iii. On or about March 10, 2019, OGBUOKIRI was recorded on surveillance depositing a stolen $36,574.10 check ("Check-4") intended for Victim-2. OGBUOKIRI deposited Check-4 into an account ("Account-2") held in the name of Victim-2 at a national bank ("Bank-2") different from Bank-1.

    iv. On or about March 16, 2019, OGBUOKIRI was recorded on surveillance depositing a $19,750.65 check ("Check-5") purportedly written by a roofing company ("Shell Entity-1") to Victim-2. OGBUOKIRI deposited Check-5 into an account ("Account-3") held in the name of Victim-2 at a national bank ("Bank-3") different from Bank-1 and Bank-2.

  c. **Victim-3**.

    i. On or about February 14, 2019, OGBUOKIRI was recorded on surveillance depositing Check-2 into an account ("Account-4") held in the name of Victim-3 at Bank-1.

  d. **Victim-4**.

    i. On or about February 7, 2019, an individual I recognized from a prior arrest photograph as ANDREW HEAVEN, the defendant, was recorded on surveillance depositing Check-3 into an account ("Account-5") held in the name of Victim-4 at Bank-2.

ii. On or about February 11, 2019, HEAVEN was recorded on surveillance depositing a forged $89,763.10 check ("Check-6") into Account-5.

iii. On or about February 14, 2019, HEAVEN was recorded on surveillance depositing a stolen $91,455.32 check ("Check-7") intended for Victim-4 into Account-5.

iv. On or about March 14, 2019, OGBUOKIRI was recorded on surveillance depositing a $58,672.45 check ("Check-8") purportedly written by Shell Entity-1 to Victim-4. OGBUOKIRI deposited Check-8 into an account ("Account-6") held in the name of Victim-4 at Bank-3.

### The Cookie-Linked Accounts

9. Based on my discussions with employees of Bank-1 and Bank-2 and my research in the course of this investigation, I have learned the following information, among other things:

a. Bank-1 and Bank-2 offer their customers online access to the customers' accounts. When a customer attempts to log on to an account held at Bank-1 or Bank-2, the respective bank logs certain information about the login attempt, including the date and time of the login, the user's login name, and the user's Internet Protocol ("IP") address.

b. When a customer attempts to log on to an account held at Bank-1 or Bank-2, the respective bank also generates a unique identifier (a "Cookie") for the customer's device. A particular Cookie remains associated with a particular device until cleared by the bank or the user.

c. If a customer logs on to multiple accounts held at the same bank from the same device, the Cookie does not change. Therefore, if Bank-1's records reflect that two accounts are accessed using the same Cookie, I know both accounts were accessed by the same device. The same is true for Bank-2. I refer to bank accounts linked in this manner as "Cookie-Linked Accounts."

d. Cookie-Linked Accounts may also be identified in a more complex manner. In some cases, records of Bank-1 or Bank-2 will show that a first account and a second account share the same Cookie, but, at a later time, the second account and a third account share a different Cookie. The Cookie may have changed because the user changed devices, or because the user cleared his Cookie cache. Nevertheless, this pattern suggests that a single user had access to all three accounts: A user with access to the

second account had access to the first account (via the device identified by the first Cookie) and had access to the third account (via the device identified by the second Cookie). Therefore, in this example, all three accounts are Cookie-Linked Accounts.

10. Based on my discussions with other law enforcement agents, bank investigators, and other individuals, and my review of reports, records, and surveillance videos and stills, I know the following, among other things:

   a. On or about February 19, 2019, a customer of Bank-1 logged on to Account-4 with a device identified by a particular Cookie ("Cookie-1") from a particular IP address ("IP Address-1").

   b. On or about February 21, 2019, a customer of Bank-1 logged on to Account-1 with Cookie-1 from IP Address-1.

   c. On or about February 21, 2019, a customer of Bank-1 logged on to an account held in the name of OLADAYO OLADOKUN, the defendant, with Cookie-1 from IP Address-1.

   d. On or about February 22, 2019, a customer of Bank-1 logged on to Account-1 with Cookie-1 from a particular IP address ("IP Address-2") different than IP Address-1.

   e. Based on public network records, I know that the internet service provider for IP Address-2 is a casino operator ("Operator-1") located near Fort Lauderdale, Florida.

   f. Based on records provided by Operator-1, I know that on or about February 21, 2019 and February 22, 2019, OLADOKUN was physically present at a casino run by Operator-1 located near Fort Lauderdale, Florida.

   g. Based on the foregoing, there is probable cause to believe that OLADOKUN accessed Account-1, Account-4, and a personal account in his own name (which are all Cookie-Linked Accounts held at Bank-1) between on or about February 19, 2019 and on or about February 21, 2019.

11. Based on my review of records provided by Bank-2, I know that the following accounts, among others, are all Cookie-Linked Accounts held at Bank-2:

   a. **Account-2.** As set forth above, HENRY OGBUOKIRI, the defendant, deposited Check-4 into Account-2.

   b. **Account-5**.  As set forth above, ANDREW HEAVEN, the defendant, deposited Check-3, Check-6, and Check-7 into Account-5.

   c. **An account ("Account-7") held in the name of Shell Entity-1**.  As set forth above, OGBUOKIRI deposited Check-5 and Check-8, which were drawn from Account-7, into Account-3 and Account-6, respectively.

   d. **An account ("Account-8") held in the name of a staffing agency ("Victim-5")**.

     i. Based on my discussions with employees of Bank-2, I know that when a customer opens a new business checking account at Bank-2 branch, a bank employee will typically lead the customer to an automated teller machine ("ATM") at the branch, demonstrate the functions of the ATM, and instruct the customer to make an opening deposit into the new account at the ATM.

     ii. On or about December 21, 2018, OGBUOKIRI was recorded on ATM surveillance making an opening deposit of $100 into Account-8.  To open Account-8, OGBUOKIRI provided Bank-2 with the name of another person ("ID Victim-2").  OGBUOKIRI also provided Bank-2 with a social security number matching the actual social security number of ID Victim-2.

     iii. On or about December 22, 2018, OGBUOKIRI was recorded on surveillance depositing a stolen $82,636.24 check ("Check-9") intended for Victim-5 into Account-8.

     iv. On or about January 7, 2019, an individual I recognized from a prior arrest photograph as DARYL BARTLEY, the defendant, was recorded on surveillance depositing a $41,350 check ("Check-10") drawn from Account-8 into an account ("Account-9") held in the name of a food processing company ("Shell Entity-2") at Bank-3.

   e. **An account ("Account-10") held in the name of a trade association ("Victim-6")**.

     i. On or about December 22, 2018, BARTLEY was recorded on ATM surveillance making an opening deposit of $100 into Account-10.  To open Account-10, BARTLEY provided Bank-2 with the social security number of another person ("ID Victim-3").  BARTLEY also provided Bank-2 with a name different than his own, but with a surname matching the actual surname of ID Victim-3.

ii. On or about March 21, 2019, an individual I recognized from a driver's license photograph as OLADAYO OLADOKUN, the defendant, was recorded on surveillance depositing a stolen $13,812 check ("Check-11") intended for Victim-6 into Account-10.

  f. **An account ("Account-11") held in a name similar to that of a network infrastructure company ("Victim-7").**

i. On or about December 17, 2018, an individual I recognized from a prior arrest photograph as DARREL WILLIAMS, the defendant, was recorded on ATM surveillance making an opening deposit of $100 into Account-11. To open Account-11, WILLIAMS provided Bank-2 with the name of another person ("ID Victim-4"). WILLIAMS also provided Bank-2 with a social security number matching the actual social security number of ID Victim-4.

ii. On or about December 17, 2018, WILLIAMS was recorded on surveillance depositing a stolen $148,886.35 check ("Check-12") intended for Victim-7 into Account-11.

  g. **An account ("Account-12") held in the name of a surplus products company ("Shell Entity-3").**

i. On or about January 16, 2019, a pharmaceutical company ("Victim-8") issued a $130,000 wire transfer ("Wire-1") into an account ("Account-13") at Bank-3 held in the name of an investment company ("Shell Entity-4"). On or about January 21, 2019, Victim-8 attempted to recall Wire-1 on the basis of fraud.

ii. On or about January 17, 2019, a $28,750 check ("Check-13") drawn from Account-13 was deposited into Account-12.

(1) On or about January 24, 2019 and January 25, 2019, an individual I recognized from a driver's license photograph as ANTHONY LEE NELSON, the defendant, was recorded on surveillance withdrawing cash from Account-12.

(2) On or about January 25, 2019, January 26, 2019, and March 9, 2019, an individual I recognized from a driver's license photograph as JOSHUA HICKS, the defendant, was recorded on surveillance withdrawing cash from Account-12.

iii. On or about March 13, 2019, a $41,961 check ("Check-14") drawn from Account-15 (defined below) was deposited into an account ("Account-14") held at Bank-1 in the name of Shell Entity-3, *i.e.*, the same name as Account-12.

iv.  On or about March 22, 2019, NELSON was recorded on surveillance withdrawing cash from Account-14.

v.  On or about April 20, 2019, an individual ("Victim-9") made a $41,886 wire transfer ("Wire-2") from a Bank-2 branch in Manhattan, New York into Account-14. Victim-9 made the transfer based on an email request purportedly sent by Victim-9's financial advisor. In fact, the email was sent from a similar but not identical email domain.

h.  **An account ("Account-15") held in the name of an industrial supplier ("Victim-10").** On or about March 6, 2019, OGBUOKIRI was recorded on surveillance depositing a stolen $57,777 check ("Check-15") intended for Victim-10 into Account-15.

i.  **An account ("Account-16") held in the name of an investment company ("Victim-11").** On or about March 8, 2019, OGBUOKIRI was recorded on surveillance depositing a stolen $29,144.38 check ("Check-16") intended for Victim-11 into Account-16.

j.  **An account ("Account-17") held in the name of a logistics company ("Victim-12").** On or about March 15, 2019, OGBUOKIRI was recorded on surveillance depositing a stolen $139,409.86 check ("Check-17") intended for Victim-12 into Account-17.

### The Osei Account

12.  Based on my discussions with other law enforcement agents, bank investigators, and other individuals, and my review of reports and records, I know the following, among other things:

a.  On or about December 10, 2018, a Bank-2 affiliate ("Victim-13"), which processed credit card payments for a hotel ("Hotel-1"), received an email request to change the bank account into which payments made to Hotel-1 would be deposited. The sender, who purported to be a representative of Hotel-1, sent Victim-13 a voided check that appeared to reflect an account held in the name of Hotel-1, but was in fact an account ("Account-18" or the "Osei Account") held in the name of "Osei Automotive LLC" at a national bank ("Bank-4") other than Banks-1 through 3. The registered owner of the Osei Account was PAUL YAW OSEI, JR., the defendant.

b.  Between on or about December 14, 2018 and on or about January 8, 2019, Bank-2 deposited into the Osei Account more than $1.4 million in payments intended for Hotel-1.

c. On or about December 17, 2018, a $73,857 check ("Check-18") drawn from the Osei Account was deposited into an account ("Account-19") at Bank-2 held in the name of an entity ("Shell Entity-5"). Check-18 was signed by OSEI.

i. On or about January 17, 2019, Account-19 received a $71,400 check ("Check-19") drawn from Account-13. As discussed above, Account-13 fraudulently received a $130,000 wire from Victim-8.

d. On or about December 18, 2018, an $18,346 check ("Check-20") drawn from the Osei Account was issued to HENRY OGBUOKIRI, the defendant. Check-20 was signed by OSEI.

### The Dynamic Construction Accounts

13. Based on my discussions with other law enforcement agents, bank investigators, and other individuals, my review of reports, records, and surveillance videos and stills, and my review of phone contents and Apple iCloud device backups collected pursuant to search warrants, I know the following, among other things:

a. I have reviewed messages on the phone application WhatsApp exchanged between a device registered to an Apple iCloud account held in the name of BALDWIN OSUJI, the defendant, and a co-conspirator ("CC-1") displaying the name "Facemobb" and a particular telephone number ("Telephone Number-1").

i. On or about February 21, 2017, FAROUK KUKOYI, the defendant, provided Telephone Number-1 to a building management company in connection with an application for a residential lease.[1] KUKOYI also provided the building management company with a copy of a driver's license bearing the name FAROUK KUKOYI. On or about December 28, 2018, OSUJI sent a WhatsApp message to CC-1 containing a screenshot showing a payment made to "$Facemobb" and the name FAROUK KUKOYI. I therefore believe that CC-1 is KUKOYI.

ii. On or about February 27, 2019, OSJUI sent KUKOYI a WhatsApp message containing the account name, account number, and routing number of an account ("Account-20" or "DC-1") at Bank-1 held in the name of "Dynamic Construction LLC" ("Shell Entity-6").

---

[1] Records provided by Sprint Corporation indicate that Telephone Number-1 is not subscribed in the name of FAROUK KUKOYI.

11

iii. On or about February 28, 2019, KUKOYI sent OSJUI a WhatsApp message containing a photograph of an invoice for $107,970. The invoice was purportedly issued by a company ("Vendor-1") to a tube manufacturer located at a particular address ("Address-1"). Based on my research, I know that a tube manufacturer with a different name ("Victim-14") is headquartered at Address-1.

iv. On or about March 7, 2019, OSUJI sent KUKOYI a WhatsApp message containing a photograph of an email from a ministry ("Victim-15") stating, in part and in substance, that Victim-15 had completed a $50,000 wire transfer.

b. On or about March 1, 2019 and on or about March 6, 2019, the following fraudulent transfers, among others, were made into DC-1.

i. On or about March 1, 2019, Victim-14 made a $107,970 transfer ("Wire-2") into DC-1, based on an email request from an individual impersonating Vendor-1.

ii. On or about March 6, 2019, Victim-15 made a $50,000 wire transfer ("Wire-3") into DC-1, based on an email request from an individual impersonating a vendor of Victim-15.

iii. On or about March 6, 2019, a regional bank ("Victim-16") made a $200,000 wire transfer ("Wire-4") into DC-1, based on an email request from an individual impersonating a client of Victim-16. On or about March 12, 2019, Victim-16 received a request to send another $100,000.

c. On or about March 1, 2019 and on or about March 6, 2019, the following fraudulent transfers, among others, were made out of DC-1.

i. On or about March 1, 2019, a $75,340 check ("Check-21") drawn from DC-1 was deposited into Account-12.

ii. On or about March 6, 2019, a $27,148 check ("Check-22") drawn from DC-1 was deposited into an account ("Account-21" or "DC-2") held in the name of "Dynamic Construction LLC," *i.e.*, the same name as DC-1, at a national bank ("Bank-5") other than Banks-1 through 4.

d. From on or about March 19, 2019 to on or about March 28, 2019, the following transactions, among others, were made concerning an account ("Account-22" or "DC-3") at Bank-2 held in

12

the name of "Dynamic Construction LLC," *i.e.*, the same name as DC-1 and DC-2.

        i.  On or about January 16, 2019, a co-conspirator not named herein ("CC-2") received a WhatsApp message from an individual whose name appears in the conversation as "Bo" ("CC-3"). In the message, CC-3 referenced his own prior arrest and included a link to a webpage containing an arrest photograph and the name BALDWIN OSUJI. I therefore believe that CC-3 is OSUJI.

        ii.  On or about March 19, 2019, OSUJI sent CC-2 a WhatsApp message containing the name "Dynamic Construction LLC" and the name of an individual, social security number, physical address, and email address matching the name, social security number, physical address, and email address on file for DC-3.

        iii.  On or about March 19, 2019, CC-2 sent a WhatsApp message to a co-conspirator not named herein ("CC-4"). The message contained the name "Dynamic Construction LLC" and the same name of an individual, social security number, physical address, and email address that had been sent by OSUJI. In addition, CC-2's message to CC-4 contained the bank account number for DC-3 and an online username, password, and security answers for Bank-2.

        iv.  On or about March 19, 2019, ANTHONY LEE NELSON, the defendant, was recorded on surveillance depositing a $22,228 official check ("Check-23") drawn from DC-2 into DC-3.

        v.  On or about March 28, 2019, an individual I recognized from a driver's license photograph as DERRICK BANKS, the defendant, was recorded on surveillance withdrawing cash from DC-3.

        vi.  On or about March 28, March 29, and March 30, 2019, NELSON was recorded on surveillance withdrawing cash from DC-3. During one of NELSON's withdrawals on March 28, 2019, BANKS is also visible on surveillance sitting in the passenger seat of NELSON's car.

### The Skaginn Accounts

14.  In the course of my investigation, I have identified four accounts at a national bank ("Bank-6") other than Banks-1 through 5 that were opened using the same name of an individual ("Individual-1"), social security number, and phone number. Three of the accounts were held in the name of "Skaginn HF LLC" and were opened on or about the following dates: September 15, 2018

13

("Account-23" or "Skaginn-1"); October 24, 2018 ("Account-24" or "Skaginn-2"); and April 3, 2019 ("Account-25" or "Skaginn-3"). The fourth account was held in the name of Individual-1 and was opened on or about November 9, 2018 ("Account-26" or "Skaginn-4," and collectively with Skaginn-1 through 3, the "Skaginn Accounts"). As discussed below, the Skaginn Accounts were hub accounts into which members of the conspiracy transferred the proceeds of their frauds.

15. Based on my discussions with other law enforcement agents, bank investigators, and other individuals, and my review of reports, records, and surveillance videos and stills, and my review of phone contents collected pursuant to a search warrant, I know the following, among other things:

    a.   **C Smith Realty**.

        i. Based on bank records, I have identified bank accounts held in the name of "C Smith Realty LLC" ("Shell Entity-7") at, among other banks, Bank-3 ("Account-27") and Bank-1 ("Account-28"). Account-27 and Account-28 were registered under the same individual name, social security number, physical address, and email address.

        ii. On or about October 10, 2018, a $53,000 official check ("Check-24") drawn from Account-27 was deposited into Skaginn-1.

        iii. Between on or about December 5, 2018 and on or about December 7, 2018, an energy company ("Victim-17") made wire and ACH transfers totalling more than $4 million to Account-28, based on an email from an individual purporting to represent a business partner of Victim-17.

        iv. On or about February 1, 2019, BALDWIN OSUJI, the defendant, sent CC-2 a WhatsApp message containing a screenshot of an email from Bank-1 stating, in part and in substance, that Account-28 would be closed due to unauthorized transactions (the "Screenshot"). Approximately one minute later, CC-2 sent the Screenshot via WhatsApp to CC-4.

    b.   **NAL Developments**.

        i. Based on bank records, I have identified bank accounts held in the name of "NAL Developments LLC" ("Shell Entity-8") at the following banks, among others: (1) Bank-2 ("Account-29" or "NAL-1"); (2) Bank-3 ("Account-30" or "NAL-2"); (3) Bank-1 ("Account-31" or "NAL-3"); and (4) a national bank ("Bank-7") other

14

than Banks-1 through 6 ("Account-32" or "NAL-4"). Each of these accounts was registered under the same individual name, social security number, physical address, and email address.

        ii. On or about October 3, 2018, a $48,000 wire transfer ("Wire-5") was issued from Account-27 into NAL-1.

        iii. On or about October 6, 2018, a $50,500 official check drawn from Account-27 was deposited into NAL-2.

        iv. Between on or about January 14, 2019 and on or about January 30, 2019, a bolt manufacturer ("Victim-18") transferred more than $800,000 to NAL-2, based on an email request from an individual impersonating a supplier of Victim-18.

        v. On or about January 2, January 4, January 9, January 11, January 13, and January 18, 2019, an individual I recognized from a driver's license photograph as JAMAR SKEETE, the defendant, was recorded on surveillance withdrawing cash from NAL-3.

        vi. On or about February 11, 2019, a counterfeit $190,000.22 check ("Check-25") purportedly written by a trust ("Victim-19") was deposited into NAL-3.

        vii. Between on or about May 23, 2019 and on or about June 6, 2019, a disability non-profit organization ("Victim-20") transferred a total of $757,350.10 into NAL-4, based on an email request from an individual impersonating a vendor of Victim-20.

        viii. On or about May 31, 2019, a $21,000 cashier's check ("Check-26") drawn from NAL-4 was deposited into Skaginn-3.

    c. **KL Teho Oy.**

        i. On or about October 16, October 17, October 19, and October 22, 2018, an individual I recognized from a prior arrest photograph as IBRAHIIMA DOUKOURE, the defendant, was recorded on surveillance withdrawing cash from an account ("Account-33") at Bank-1 held in the name of "KL-Teho Oy LLC" ("Shell Entity-9").

        ii. On or about October 29, 2018 and on or about October 30, 2018, an electronics manufacturer ("Victim-21") sent transfers totalling more than $1.6 million to Account-33. On or

about November 1, 2018, Victim-19 attempted to recall the transfers on the basis of email fraud.

        iii. On or about October 30, 2018, a $55,400 check ("Check-27") drawn from Account-33 was deposited into Skaginn-1.

    d. **Shrader Electric.**

        i. Between on or about March 22, 2019 and on or about March 29, 2019, a plastic fabricator ("Victim-22") sent a total of $56,918.82 in payments to an account ("Account-34") held at Bank-1 in the name of "Shrader Electric" ("Shell Entity-10"). On or about April 1, 2019, Victim-22 attempted to recall the transfers on the basis of email fraud.

        ii. On or about March 28, March 30, March 31, and April 3, 2019, DOUKOURE was recorded on surveillance withdrawing cash from Account-34.

        iii. On or about March 30, 2019, a $15,000 cashier's check ("Check-28") drawn from Account-34 was deposited into Skaginn-1.

        iv. On or about April 2, 2019, a state bar foundation ("Victim-23") made a $282,042.55 wire transfer ("Wire-6") into Account-34, based on wire instructions provided by an individual purporting to be the seller in a real property transaction. On or about April 4, 2019, Victim-23 attempted to recall Wire-6 on the basis of email fraud.

    e. **Pepco.**

        i. On or about May 3, 2019, DOUKOURE was recorded on surveillance depositing a stolen $60,507.61 check ("Check-29") intended for a company ("Victim-24") into an account ("Account-35") held in the name of "Pepco LLC" ("Shell Entity-10") at a national bank ("Bank-8") other than Banks-1 through 7.

        ii. On or about May 17, 2019, DOUKOURE was recorded on surveillance requesting a $20,000 official check ("Check-30") drawn from Account-35. On or about May 20, 2019, Check-30 was deposited into Skaginn-3.

        iii. Between on or about May 31, 2019 and June 10, 2019, a shipping company ("Victim-25") made transfers totalling $305,497.19 to Account-35, based on an email request from an individual impersonating a vendor of Victim-25.

      iv. On or about June 5, 2019, DOUKOURE was recorded on surveillance requesting an $80,000 official check ("Check-31") drawn from Account-35. On or about June 6, 2019, Check-31 was deposited into Skaginn-4.

  f. **Victim-26**

      i. On or about May 10, 2019, an individual ("Victim-26") in Manhattan, New York, sent a $59,500 wire transfer ("Wire-7") to Skaginn-1 from a Bank-7 branch in Yonkers, New York.

      ii. Victim-26 sent Wire-7 based on an email request from an individual impersonating Victim-26's attorney in connection with a real estate transaction.

  g. **AK Property Investments.**

      i. On or about May 30, 2019, DERRICK BANKS, the defendant, was recorded on surveillance opening two accounts ("Account-36" and "Account-37") at Bank-1. Account-36 and Account-37 were both held in name of "AK Property Investments LLC" ("Shell Entity-12"). To open Account-36 and Account-37, BANKS provided Bank-1 with the name of another person ("ID Victim-5"). POOLE also provided Bank-1 with a social security number matching the actual social security number of ID Victim-5.

      ii. On or about June 14, 2019, a hospital system ("Victim-27") made a $392,700 transfer ("Wire-8") to Account-36, based on an email request from an individual purporting to be a vendor of Victim-27. On or about June 18, 2019, Victim-27 made an additional $196,700 transfer ("Wire-9") to Account-36.

      iii. On or about June 14, 2019, $196,000 was transferred from Account-36 to Account-37.

      iv. On or about June 14, 2019, BANKS was recorded on surveillance withdrawing cash from Account-36.

      v. On or about June 15, 2019 and June 20, 2019, ANTHONY LEE NELSON, the defendant, was recorded on surveillance withdrawing cash from Account-36.

      vi. On or about June 17, 2019, an $85,000 check ("Check-32") drawn from Account-37 was deposited into Skaginn-2.

  h. **King Metal Fencing.**

      i. On or about June 13, 2019, BANKS was recorded on surveillance opening an account ("Account-38") at Bank-1 held

in name of "King Metal Fencing LLC" ("Shell Entity-13"). To open Account-38, BANKS provided Bank-1 with the name of another person ("ID Victim-6"). BANKS also provided Bank-1 with a social security number matching the actual social security number of ID Victim-6.

ii. On or about June 26, 2019, a car dealership ("Victim-28") issued an $185,900 wire transfer ("Wire-10") to Account-38, based on an email request from an individual impersonating an owner of Victim-28.

iii. On or about June 28, 2019, a $20,800 check ("Check-33") drawn from Account-38 was deposited into Skaginn-2.

    i. **Front Paige Events.**

i. On or about July 26, 2019, JOSHUA HICKS, the defendant, was recorded on surveillance opening an account ("Account-39") at Bank-1 held in the name of "Front Paige Events LLC" ("Shell Entity-14"). To open Account-39, HICKS provided Bank-1 with the name of another person ("ID Victim-7"). HICKS also provided Bank-1 with a social security number matching the actual social security number of ID Victim-7.

ii. On or about August 9, 2019, a city ("Victim-29") in California transferred more than $2 million to Account-39, based on an email request from an individual impersonating a vendor of Victim-29.

iii. Between on or about August 9, 2019 and on or about August 19, 2019, Account-39 was depleted through a series of personal checks, including the following:

    **(1) Bishop World Studios.**

(a) On or about August 13, 2019, an individual I recognized from a prior arrest photograph as KOWAN POOLE, the defendant, was recorded on ATM surveillance making an opening deposit of $100 into an account ("Account-40") at Bank-2 held in the name of "Bishop World Studios LLC" ("Shell Entity-15"). To open Account-40, POOLE provided Bank-2 with the name of another person ("ID Victim-8"). POOLE also provided Bank-2 with a social security number matching the actual social security number of ID Victim-8.

(b) On or about August 14, 2019, the following checks were drawn from Account-39: (1) a $98,600 check ("Check-34"); a second $96,600 check ("Check-35"); and a $96,500 check ("Check-36").

(c) Check-34 was deposited into Account-40. Check-35 and Check-36 were deposited into bank accounts held in the name of "Bishop World Studios LLC," *i.e.*, the same name as Account-40, at banks other than Bank-2.

(d) On or about August 26, 2019 and August 28, 2019, POOLE was recorded on surveillance withdrawing cash from Account-40.

### (2) AK Property Investments.

(a) On or about August 9, 2019, a $98,650 check ("Check-37") was drawn from Account-39. On or about August 16, 2019, a $98,115 check ("Check-38") was drawn from Account-39.

(b) Check-37 and Check-38 were deposited into two accounts held in the name of "AK Property Investments," *i.e.*, the same name as Account-37, at banks other than Bank-1.

(c) As set forth above, Check-32 was drawn from Account-37 and deposited into Skaginn-2.

### (3) King Metal Fencing.

(a) On or about August 15, 2019, an $88,964 check ("Check-39") was drawn from Account-39.

(b) Check-39 was deposited into an account held in the name of "King Metal Fencing LLC," *i.e.*, the same name as Account-38, at a bank other than Bank-1.

(c) As set forth above, Check-33 was drawn from Account-38 and deposited into Skaginn-2.

WHEREFORE, the deponent respectfully requests that warrants issue for the arrests of OLADAYO OLADOKUN, FAROUK KUKOYI, BALDWIN OSUJI, HENRY OGBUOKIRI, JOSHUA HICKS, ANTHONY LEE NELSON, DERRICK BANKS, IBRAHIIMA DOUKOURE, JAMAR SKEETE, PAUL YAW OSEI, JR., KOWAN POOLE, DARREL WILLIAMS, DARYL BARTLEY, GARNET STEVEN MURRAY-SESAY, a/k/a STEVEN GARNET MURRAY-SESAY, and ANDREW HEAVEN, the defendants, and that they be arrested and imprisoned, or bailed, as the case may be.

_____
DANIEL ALESSANDRINO
Detective
New York City Police Department


Sworn to before me this
27 day of November 2019

_____
THE HONORABLE ROBERT W. LEHRBURGER
United States Magistrate Judge
Southern District of New York